UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 08-10385-RGS

UNITED STATES OF AMERICA

v.

PRUDENCE KANTENGWA

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL
OR, IN THE ALTERNATIVE, FOR A NEW TRIAL

October 3, 2012

STEARNS, D.J.

Having been tried before a jury, defendant Prudence Kantengwa was convicted of two counts of making false statements on visa and asylum applications[1] and four counts of lying and obstructing justice in an asylum hearing before an Immigration

---

[1] Under the court's instructions and according to the indictment, Count Two was derivative of the guilty verdict on Count One, that is, Count Two charged that Kantengwa had falsely denied on her Asylum Application that she had previously committed a crime under United States law. The crime about which she was alleged to have lied was her prior entry of the United States on a visa procured by the making of the false statements alleged in Count One. The only argument that Kantengwa proffers that is unique to Count Two is the suggestion that venue was inappropriate in Massachusetts as the Asylum Application was completed in New Hampshire and filed in Vermont. However, as the government points out, Kantengwa reaffirmed the false statement in the Asylum Application during two interviews with immigration officials in Massachusetts and in her testimony before an Immigration Judge in Boston. Gov't Mem. at 19. *Cf. United States v. Salinas*, 373 F.3d 161, 166-167 (1st Cir. 2004).

1

Judge. The case arose out of the civil war that engulfed Rwanda in 1994 when tensions between the rival Tutsi and Hutu peoples burst into a genocidal conflict in which as many as 900,000 Rwandans, most of whom were of Tutsi origin, perished. The indictment stemmed from Kantengwa's lies to officials about her participation in the politics of the Hutu-dominated regime responsible for the killings and her personal witnessing of acts of genocide unleashed by Hutu militias in the provincial city of Butare. Specifically, Kantengwa was charged with lying about her membership in the Hutu-dominated governing party, the Mouvement républicain national pour la démocratie et le développement (MRND); her late husband's role during the genocide as the director of the Service Central de Renseignement (SCR), the Rwandan internal security service; and her knowledge of the existence of a genocidal roadblock erected in front of the Hotel Ihuliro in Butare, where she resided for some two months after fleeing the capital city of Kigali.

At the close of the government's case-in-chief, Kantengwa moved for a Rule 29 judgment of acquittal, arguing that the government had failed to produce evidence sufficient to warrant her conviction on any of the nine counts of the indictment. The court denied the motion and Kantengwa proceeded to mount a defense. After two days of deliberation, the jury returned guilty verdicts on Counts One through Three and

Counts Seven through Nine of the indictment.[2]  Kantengwa now renews her motion for judgment of acquittal pursuant to Fed. R. Crim. P. 29(c), and also moves, in the alternative, for a new trial pursuant to Fed. R. Crim. P. 33(a).

Kantengwa's argument for judgment of acquittal is largely based on perceived deficiencies in the quality of the government's evidence, or in those instances in which she concedes that an answer that she gave during the immigration proceedings might be construed as false, contends that it was based on a misunderstanding of the question,[3] or that it had no material tendency to influence the decision maker to whom it was addressed.

The standard governing a Rule 29 judgment of acquittal is highly deferential to

---

[2] Count Nine of the indictment, which charged obstruction of justice, was derivative of the convictions on Counts Three, Seven, and Eight, in which the jury found that Kantengwa had committed perjury in her testimony before the Immigration Judge regarding her asylum application. The jury acquitted Kantengwa on Counts Four through Six, in which she was alleged to have lied to the Immigration Judge about her degree of personal interest in Rwandan political matters and the extent of her husband's political affiliations.

[3] This aspect of Kantengwa's motion requires little comment as it is based almost entirely on post-hoc self-serving statements dredged from prior proceedings as, for example, Kantengwa's affirmative response to a question from the Immigration Judge as to whether a false statement on the Rwandan Questionnaire was in her handwriting or not: "[B]ut I believe that I didn't read it properly when I was filling that out. . . . *I didn't really take the time to go through it*." Def.'s Mem. at 7-8 (emphasis in original). As the evidence developed at trial, Kantengwa was an educated woman, a practicing lawyer, and one of only a handful of Rwandan women who at the time possessed law degrees.

3

the jury's verdict on matters of disputed fact.

> In determining whether particular evidence is sufficient to ground a conviction, we take the facts and all reasonable inferences therefrom in the light most agreeable to the jury's verdict. If, on that view, the prosecution has adduced sufficient evidence of the essential elements of the crime such that a rational jury could find the defendant guilty beyond a reasonable doubt, the insufficiency challenge fails.

*United States v. Walker*, 665 F.3d 212, 224 (1st Cir. 2011) (citations omitted). *See also United States v. Perez-Melendez*, 599 F.3d 31, 40 (1st Cir. 2010) ("[D]efendants challenging convictions for insufficiency of evidence face an uphill battle on appeal.") (citation omitted). The jury's verdict must stand "unless the evidence, viewed in the light most hospitable to the government's theory of the case, could not have persuaded a rational trier of fact, beyond any reasonable doubt, of the defendant's guilt." *United States v. Soler*, 275 F.3d 146, 150 (1st Cir. 2002), citing *United States v. Lara*, 181 F.3d 183, 200 (1st Cir. 1999).

In the indulgent light of Rule 29, a rational jury could find that : (1) contrary to her denials, Kantengwa continued her membership in the MRND after the loosening of political restrictions in 1991, as corroborated by the testimony of a coworker that she attended MRND rallies after 1991, continued to sport an MRND party scarf and badge, personally invested in a private radio station (Radio Télévision Libre des Milles Collines) founded for the purpose of broadcasting extremist MRND propaganda, and

received a plum patronage job (for which she appears to have been unqualified) in SONARWA, a state insurance company managed by MRND party members; (2) that contrary to Kantengwa's statement that her husband had left his post as director of the SCR before the genocide began, the testimony of percipient witnesses, including that of a long-serving member of the Rwandan Parliament, established that he remained as director throughout the genocide, and had evacuated with the Hutu-led government from Kigali to a provisional headquarters in Gitarama where he continued to coordinate SCR activities; (3) that the Hotel Ihuliro in Butare where Kantengwa took refuge for some two months was owned by a prominent MRND couple (the wife had served as an MRND government minister) and that their son (who was also residing at the Hotel) was the leader of one of the most vicious of the MRND youth militias and was married to Kantengwa's sister; and (4) that it would have been virtually impossible for anyone who resided at the Hotel Ihuliro during the time Kantengwa was a resident not to have been aware of the roadblock that had been erected immediately in front of the Hotel's entrance.

I am also persuaded that a rational jury could conclude that Kantengwa's lies on these subjects were material. To be material, "[a false] statement must have 'a natural tendency to influence, or [be] capable of influencing, the decision of the decision making body to which it was addressed.'" *United States v. Gaudin*, 515 U.S. 506, 509

5

(1995), quoting *Kungys v. United States*, 485 U.S. 759, 770 (1988). There is no requirement that to be material, a false statement must be successful in influencing a governmental decision, or even be relied upon by government officials in the decision making process. All that must be shown is that the information is of the type that these officials typically rely on in making executive decisions. *United States v. Sebaggala*, 256 F.3d 59, 65 (1st Cir. 2001); *United States v. Blasini-Lluberas*, 169 F.3d 57, 66 (1st Cir. 1999).[4]

At trial, present and former consular officers of the Foreign Service (one of whom, Beth Payne, had helped create the Rwanda Questionnaire), uniformly testified that had Kantengwa given truthful answers on the questionnaire and the visa application, her application would have been handled very differently and in all likelihood she would have been denied entry into the United States. The Boston Director of Citizenship and Immigration Services gave similar testimony as to the

---

[4] The same rules defining materiality apply to the decision making of the Immigration Judge. Thus, Kantengwa's lengthy argument that the government failed to present evidence that her perjury actually influenced Judge Klein and her contention that the court erred in refusing to instruct the jury "on the legal standards for either the asylum inquiry or the persecutor bar" are wide of the mark. See Def.'s Mem. at 48-56. As the jury demonstrated in acquitting Kantengwa of three instances of alleged perjury in the asylum proceeding (and convicting on three), it was quite capable of differentiating between those statements that it appropriately considered to be material and those that it found too vague or ambiguous to have had a tendency to influence the thinking of the Immigration Judge.

impact truthful answers would have had on the processing of Kantengwa's asylum application. The test of materiality, in other words, was easily met.[5]

Rule 33(a) of the Federal Rules of Criminal Procedure authorizes a trial court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The court may consider both the weight of the evidence and the credibility of the witnesses in deciding a motion for a new trial. *United States v. Rothrock*, 806 F.2d 318, 321 (1st Cir. 1986). "The remedy of a new trial is rarely

---

[5] Kantengwa makes a technical argument that she could not be found guilty on Count One because "the first paragraph of 18 U.S.C. § 1546(a) does not criminalize the use of an *authentic* visa knowing that it was procured by false statement, but rather criminalizes the 'counterfeiting or alternation (sic) of, or the possession, use, or receipt of an already counterfeited or altered immigrant or nonimmigrant visa, permit, or other document required for entry into the United States.'" Def.'s Mem. at 3 (emphasis in original), quoting *United States v. Campos-Serrano*, 404 U.S. 293, 295 (1971). In other words, because Kantengwa possessed a real visa, albeit one that may have been obtained by means of false statements, and not one that was forged or counterfeit, an acquittal must follow, or so the argument goes. It is true that the indictment alleged that Kantengwa possessed a Non-Immigrant Visa "knowing it [the visa] to have been falsely made *and* procured by means of false claims and statements, *and* to have been otherwise obtained by fraud and unlawfully obtained . . . ." (emphasis added). While the draftsmanship of the indictment could have been better, the statute itself uses the conjunctive "or" – and not "and" – at each point of emphasis. It is an accepted canon of statutory construction that the word "or" is to be given its normal disjunctive meaning. *See Mineral Policy Ctr. v. Norton*, 292 F. Supp. 2d 30, 42-43 (D.D.C. 2003). Here, there could have been no jury confusion as the court correctly instructed the jury under the false procurement prong of the statute (and following its usual practice did not provide a copy of the indictment to the jury). *See United States v. Krstic*, 558 F.3d 1010, 1014 (9th Cir. 2009) (rejecting the identical argument that Kantengwa makes here – "*Campos-Serrano* cannot support the weight [defendant] places on it.").
7

used; it is warranted 'only where there would be a miscarriage of justice' or 'where the evidence preponderates heavily against the verdict.'" *United States v. Andrade*, 94 F.3d 9, 14 (1st Cir. 1996) (citation omitted).

Kantengwa's motion for a new trial is based on what she contends was the improper admission of the testimony of Dr. Timothy Longman regarding the historical evidence corroborating the existence of the roadblock in front of the Hotel Ihuliro during Kantengwa's stay in Butare and its role in the work of the genocidaires. Def.'s Mot. at 57-67. Kantengwa's principal argument is that whatever Dr. Longman's qualifications,[6] his testimony exceeded the permissible scope of Rule 702 because "[t]he determination of whether a roadblock existed in a specific place at a specific time is the type of factual issue that jurors routinely determine . . . . The jurors need no specialized knowledge to understand testimony about physical location and timing." Def.'s Mem. at 60. This might be true if timing and location were the only matters at issue – equally important, however, was the issue of materiality. It is not evident or likely that the typical juror (or judge) would recognize the association between a

---

[6] Dr. Longman is the Director of the African Studies Center at Boston University. His Ph.D. dissertation focused on the Rwanda genocide for which he personally conducted research (largely through interviews with survivors) in Rwanda. He also taught at the University in Butare where he lived while doing his doctoral research. Kantengwa did not challenge Dr. Longman's credentials as an historian of the Rwandan civil war.

8

roadblock and the program of mass genocide that led U.S. officials to implement a special process for screening all Rwandan visa applicants. Nor is there any weight in Kantengwa's argument that as an historian, Dr. Longman improperly relied on the hearsay accounts of the researchers who helped assemble the work on which he collaborated in producing the historical account of the genocide, *Leave None to Tell the Story*. Evidentiary rules permit an expert to base his or her opinions on facts supported by the testimony of other witnesses or by facts or data that, even though not in evidence, are independently admissible (and of the kind on which experts routinely rely in forming an opinion). *Williams v. Illinois*, 132 S.Ct. 2221, 2228 (2012) ("Under settled evidence law, an expert may express an opinion that is based on facts that the expert assumes, but does not know, to be true . . . . We now conclude that this form of expert testimony does not violate the Confrontation Clause because that provision has no application to out-of-court statements that are not offered to prove the truth of the matter asserted. When an expert testifies for the prosecution of a criminal case, the defendant has the opportunity to cross-examine the expert about any statements that are offered for their truth."); *see also Bullcoming v. New Mexico*, 131 S.Ct. 2705, 2722 (2011) (Sotomayor, J., concurring).[7]

---

[7] Kantengwa's attempt to paint Dr. Longman as a suspect "overview" witness merely parroting the testimony of more knowledgeable witnesses, *see United States v. Flores-de-Jesús*, 569 F.3d 8 (1st Cir. 2009), requires no extended discussion. Dr.

ORDER

For the foregoing reasons, defendant's motion for judgment of acquittal or, in the alternative, for a new trial is <u>DENIED</u>.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE

---

Longman clearly testified to his own expert knowledge about the historical events that unfolded during the Rwandan civil conflict and its aftermath.